**In re Harvey E. GREIF, Debtor.**

**Bankruptcy No. 91–18673–JNG.**

United States Bankruptcy Court,
D. Massachusetts.

Aug. 27, 1992.

Gary W. Cruickshank, Boston, Mass., for debtor.

John O. Desmond, Framingham, Mass., Chapter 7 Trustee.

Paul S. Samson, Reimer & Braunstein, Boston, Mass., for First Nat. Bank of Boston.

## MEMORANDUM AND ORDER

JAMES A. GOODMAN, Chief Judge.

On October 16, 1991, the Debtor, Harvey E. Greif ("Debtor"), filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor filed his schedules and statement of financial affairs on November 15, 1991. In his schedules, the Debtor claimed that the following interests were excluded from his bankruptcy estate: 1) his interest in the approximate amount of $550,000.00 in the Greif & Litwak, P.C., Profit Sharing Trust, a profit sharing plan

established by the Debtor's employer, 2) his interest in the amount of $16,449.34 in a Keogh Plan held by Fidelity Investments (collectively the "Plans"), and 3) his interest in an Individual Retirement Account ("IRA") in the amount of $2,390.28. The Debtor asserted that these interests were property that is excluded from the bankruptcy estate pursuant to section 541(c)(2)[1] or, alternatively, property that is exempt pursuant to 11 U.S.C. § 522(b)(2)(A).[2]

On December 16, 1991, the First National Bank of Boston (the "Bank") filed an objection to the Debtor's claim of exclusion or alternative claim of exemption. On January 13, 1992, John O. Desmond, the Chapter 7 Trustee (the "Trustee"), filed his objection to the claimed exclusions.[3]

Greif & Litwak, P.C. ("G & L") intervened as an interested party and filed a response to the Bank's objection on January 14, 1992. The Debtor filed his own response to the Bank's objection on January 15, 1992.

At a hearing on January 17, 1992, the Court took the issue of the claimed exclusions under advisement. The Court ordered the parties to submit an Agreed Statement of Facts within two weeks and to articulate the legal issues. The Court allowed the parties thirty days to submit briefs and an additional two weeks for reply briefs.

On February 4, 1992, the Debtor and the Bank submitted their Agreed Statement of Facts, Issues of Fact and Law, and Issues of Law, as well as a proposed pre-trial order. The Court entered the pre-trial order on February 7, 1992, which required the parties to complete discovery by March 6, 1992. The Court ordered briefs to be submitted by April 6, 1992, with reply briefs due by April 20, 1992.

On March 6, 1992, the Debtor and the Bank jointly submitted a Revised Statement of Agreed Facts, Issues of Fact and Law, and Issues of Law (the "Revised Statement"). On the same day, they submitted a joint motion to modify the Court's February 7th order. The Court allowed that motion. Approximately one month later, the parties filed a Joint Motion to Suspend Modified Pre-Trial Scheduling Order. In that motion, the parties reported that they had reached an agreement relating to the Bank's and the Trustee's objections and were in the process of documenting the settlement. They requested that the Court suspend its order of February 7, 1992 for thirty days, stating that if they did not present their settlement to the Court by May 6, 1992, they would submit a revised scheduling order. On April 8, 1992, the Court allowed the Joint Motion to Suspend.

As of the date of this Memorandum, the parties have failed to file either settlement papers or a revised scheduling order.

In the Revised Statement the parties jointly presented the following legal questions:

1. May all or any portion of the Debtor's interest in the Plans be excluded from his bankruptcy estate under 11 U.S.C. § 541(c)(2)?

2. If the Debtor has the power to alter, amend, or revoke the Plans, is the Debtor's power property of the estate under 11 U.S.C. § 541(c)(2)?

3. If the Debtor's power is property of the estate, may the trustee exercise the Debtor's power to alter, amend, or revoke the Plans?

---

1. Section 541(c)(2) provides: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).

2. Section 522(b)(2)(A) provides in relevant part:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition.... 11 U.S.C. § 522(b)(2)(A).

3. Both the Bank and the Trustee also objected to the Debtor's attempt to claim "all household goods, furniture, books, art, collections, bank accounts, motor vehicles, and other assets which he owns as a joint tenant with his spouse." This memorandum does not address these particular objections.

4. Is ERISA "Federal Law, other than subsection (d) of this section," for the purposes of Section 522(b)(2)(A) of the Bankruptcy Code, such that the Plans are exempt assets and beyond the reach of the Debtor's trustee and his creditors?

The parties presented the following five additional questions regarding the operation of Mass.Gen.Laws Ann. ch. 235, § 34A (West Supp.1992)[4], the state exemption statute:

1. Is G.L. c. 235, § 34A pre-empted by the operation of ERISA?

2. Is G.L. c. 235, § 34A pre-empted by the Bankruptcy Code?

3. Does G.L. c. 235, § 34A create enforceable exemption under Massachusetts law such that the Debtor's interests in the Plans are exempt from his estate and beyond the reach of his Trustee and creditors pursuant to 11 U.S.C. § 522(b)(2)(A)?

4. If yes, does G.L. c. 235, § 34A extend to all funds deposited into the Debtor's retirement accounts as of the effective date of said statute and to deposits into the Debtor's retirement accounts made after the effective date of said statute?

5. If G.L. c. 235, § 34A creates and enforceable exemption under Massachusetts law, does it protect the Debtor's interest in his IRA from the reach of the Trustee and creditors?

A recent ruling by the U.S. Supreme Court, *Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), directly addresses several of the issues raised by the parties. For example, *Patterson* directs this Court to answer the parties' very first question in the affirmative, to the extent that the plans are ERISA-qualified plans. The Supreme Court is clear on this issue:

The natural reading of the provision [§ 541(c)(2)] entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law....

\*   \*   \*   \*   \*   \*

The anti-alienation provision required for ERISA qualification and contained in the Plan at issue in this case thus constitutes an enforceable transfer restriction for purposes of § 541(c)(2)'s exclusion of property from the bankruptcy estate.

—— U.S. at ——, 112 S.Ct. at 2246. The parties have agreed, in the Revised Statement, that each of the plans contains a provision that assets of the plans may not be assigned or alienated, thus satisfying ERISA's anti-alienation requirement. 29 U.S.C. § 1056(d).

The remaining issue on this question, then, is whether the plans do qualify in all other respects as ERISA plans. With respect to this and all other remaining issues, the parties shall either file settlement papers by September 15, 1992 or a Final Revised Statement, containing the agreed and disputed facts, as well as a final statement of the outstanding legal issues. If there are remaining factual issues in dispute, the Court will promptly schedule an evidentiary hearing. If there are no material facts in dispute, the parties shall file briefs no later than September 25, 1992. Reply briefs shall be due no later than September 30, 1992. No further continuations, modifications or suspensions of these scheduled dates shall be allowed.

---

4. Mass.Gen.Laws Ann. ch. 235, § 34A provides: "The right or interest of any person in an annuity, pension, profit sharing or other retirement plan maintained in accordance with the federal Employee Retirement Income Security Act of 1974 ... shall be exempt from the operation of any law relating to insolvency and shall not be attached or taken as execution or other process to satisfy any debt or liability of such person...."